THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
HERMAN LINCOLN HUFFMAN, Defendant-Appellant.

Fourth District   No. 4—88—0006

Opinion filed December 28, 1988.

714

Zimmerly, Gadau, Selin & Otto, of Champaign, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and J.A.C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Following a jury trial held on October 19 through 21, 1987, defendant Herman Lincoln Huffman was convicted of two counts of unlawful delivery of a controlled substance. (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(2).) He was sentenced to concurrent eight-year terms of imprisonment on each count, ordered to pay restitution in the amount of $320, and fined $340. Huffman appeals, contending (1)

evidence of his possible involvement in prior drug dealings was improperly admitted; (2) the circuit court improperly denied his motion for directed verdicts; (3) the circuit court improperly refused to instruct the jury concerning the possible impact of the drug addiction of an informant, who was one of the State's key witnesses, on the informant's credibility as a witness; and (4) the circuit court abused its discretion in imposing sentence.

The events which culminated in Huffman's arrest began when Christopher Ferguson, an airman at Chanute Air Force Base, got into trouble with the military authorities as a result of cocaine usage, writing insufficient funds checks, cashing stolen checks, and going AWOL. In the hope of obtaining a lesser amount of punishment for his misconduct, Ferguson agreed in the early part of 1987 to make undercover purchases of illegal drugs in cooperation with the military authorities and the Champaign police department.

The charges against Huffman stem from two controlled drug purchases which Ferguson made from Huffman at the Blue Island Tavern, following an unsuccessful effort by Ferguson to purchase drugs from Huffman at the same tavern on March 11, 1987. The first controlled purchase occurred on March 16, 1987, in a closed rest room stall in the tavern; the second occurred on the evening of April 8, 1987, beside a pinball machine in the pool table area of the tavern. Special agent Joseph Bates of the division of criminal investigation of the Illinois State Police accompanied Ferguson to the Blue Island Tavern on the evenings of both of the controlled drug purchases and posed as a fellow airman. While at the Blue Island Tavern, Bates and Ferguson made an effort to appear as normal customers of the tavern, and they danced and consumed alcoholic beverages.

According to the testimony of Ferguson and Bates, at the time of the first controlled drug purchase Ferguson and Huffman exchanged $160 for a substance which laboratory tests later established was cocaine behind the closed door of a rest room stall, and Ferguson handed Bates the cocaine which he had just purchased immediately upon exiting the stall. On the second occasion, Ferguson and Huffman exchanged $160 for a substance later identified as cocaine while standing on the other side of a pinball machine from Bates. Bates testified that at that time, he could see only the portions of Ferguson's and Huffman's bodies which were below their knees and above their waists. It appeared to Bates the two men were exchanging something at the time, but he could not tell what it was. Upon completion of the transaction, Ferguson returned directly to Bates from behind the pinball machine and handed him six packets of cocaine.

While testifying on his own behalf, Huffman acknowledged he and Ferguson were together in the rest room stall and beside the pinball machine at the times in question, but his testimony as to what transpired on those occasions conflicted with that of Ferguson. Huffman stated that in both instances Ferguson requested Huffman sell him cocaine, but he refused to do so. Huffman testified he became increasingly perturbed by Ferguson's repeated requests he sell Ferguson cocaine and stated that while standing by the pinball machine, he said to Ferguson, "I would appreciate it if you would get the fuck out of my face."

Huffman first asserts he was denied a fair trial because the circuit court erroneously admitted testimony which created the certain inference he was a drug dealer. Huffman contends admission of this evidence violated the principle that evidence of other crimes is generally inadmissible. This contention is based on the following portion of the State's redirect examination of Ferguson:

"Q. Airman Ferguson, you testified on cross examination that you did not list the Defendant's name when you originally reported whom you bought drugs from, is that correct?

A. That's correct.

Q. If that's the case, how did you know to approach him on March 11?

[Huffman's attorney]: Objection. [Proceedings out of presence of jury.]

\* \* \*

Q. Airman Ferguson, on cross examination, [Huffman's attorney] asked you about a list that you gave OSI [the Air Force Office of Special Investigation] in November of '86, that contained the names of persons whom you had purchased drugs from directly, is that correct?

A. That's correct.

Q. And, you indicated that the Defendant, Herman Lincoln Huffman, was [not] on that list, is that correct?

A. That's correct.

Q. Were there other names mentioned in November of '86?

A. Yes.

[Huffman's attorney]: Objection. It exceeds the scope of cross examination.

THE COURT: Well, no, I don't believe so. Overruled. You may answer, or the answer may stand. You may continue.

MS. HIRSCH: I didn't hear the answer.

A. Yes.

Q. Were there names of persons whom you had seen sell narcotics to others?

A. Yes.

Q. Did you tell OSI about those people?

A. Yes."

(Huffman asserts the omission of the bracketed word "not" from the above portion of the transcript of the proceedings at his trial was an error on the part of the court reporter. The State does not dispute this contention.)

The State contends that it was properly permitted to introduce evidence which created an inference Ferguson had engaged in prior drug dealings, because otherwise the jury would have been left with an uncontested inference Ferguson and Bates selected Huffman at random as a person to be charged with illegal drug dealing. The State contends adequate precautionary measures were taken to ensure Huffman was not unduly prejudiced by this testimony, since no evidence was admitted which specifically named Huffman as an individual who had engaged in prior illegal drug transactions. The State concludes the testimony at issue could have benefited and harmed each side equally and, therefore, the circuit court's admission of this evidence was proper or was at least harmless error.

In his reply brief, Huffman asserts the circuit court granted a motion *in limine* to exclude any testimony regarding Ferguson's knowledge of prior drug sales on the part of Huffman. Huffman contends (without citation of authority) exceptions to the rule barring the admission of other crimes evidence do not apply when such a motion *in limine* has been granted.

The dispute concerning admission of the testimony creating a possible inference of prior illegal drug sales on the part of Huffman had its genesis in a statement which Ferguson provided to Special Agent Tolley of the Air Force's Office of Special Investigation, on November 18, 1986, a copy of which was included in the discovery which the State provided to Huffman. In this statement, Ferguson stated one of the persons from whom he purchased cocaine in the first part of 1986 was "Merriweather," and he said of Merriweather:

"MERRIWEATHER is considered a small time dealer in the Champaign, IL area. MERRIWEATHER buys cocaine and 'gumball' heroin from JOE POSEY, a semi-'big time Champaign, IL, drug dealer [*sic*]. On all occasions that I was present with MERRIWEATHER, I observed him 'snort' the heroin and smoke the cocaine. MERRIWEATHER also purchases heroin and cocaine from a Champaign, IL drug dealer named 'LIN-

COLN,' a black male, who's status as a drug dealer is supposedly equal to POSEY's.".

At Huffman's trial, Ferguson explained, out of the jury's presence, that in the above statement "Lincoln" refers to Huffman, and he had seen Huffman sell cocaine to Merriweather at Merriweather's residence.

On October 19, 1987, Huffman filed a motion *in limine*, requesting the People be prevented, *inter alia*, from making references to previous offenses on his part or to the fact he has a reputation "for being a dealer," unless and until an offer of proof had been made and the matters contained in such offer had been ruled admissible by the court. The circuit court apparently allowed this motion, and the State agreed not to present evidence or argument concerning any of the matters mentioned in the motion.

During the cross-examination of Ferguson by Huffman's counsel, the following exchange occurred:

"Q. And, you agreed to name those names in November [1986] of people that you have purchased from, correct?

A. Correct.

Q. And, did you name everyone?

A. Yes, I did.

Q. And, the defendant in this case wasn't one of them, was he?

A. Not at that time."

This cross-examination apparently precipitated the examination of Ferguson on redirect to which Huffman objects. Before permitting the disputed redirect examination of Ferguson, the circuit court concluded Ferguson's testimony on cross-examination that in November 1986, he told the Air Force Office of Special Investigation the names of persons from whom he had purchased drugs, and Huffman was not among those persons, could have created an incorrect inference Ferguson had no reason at all to think Huffman would sell drugs to him. Therefore, the court ruled the State should be allowed to inquire whether the list which Ferguson provided the Air Force Office of Special Investigation in November 1986 included the names of all the people whom Ferguson had seen sell drugs in the community or whether he could have provided the names of additional drug dealers on that date. The court opined introduction of this evidence would permit the jury to infer either (1) Ferguson had never purchased drugs from Huffman and had approached him at random or (2) Ferguson saw Huffman sell drugs to someone else and therefore did not approach him at random.

■ Evidence of other crimes is inadmissible if offered merely to establish a propensity to commit crimes. It is, however, admissible if offered to show knowledge, intent, motive, design, plan, or identification. *People v. Alexander* (1982), 93 Ill. 2d 73, 442 N.E.2d 887.

The present case is distinguishable from *People v. Porter* (1973), 13 Ill. App. 3d 437, 300 N.E.2d 314, on which Huffman principally relies in support of his position as to this issue. There, the addict-informant specifically testified on direct examination the defendant was a "pusher." Similarly, in *People v. Baxter* (1966), 74 Ill. App. 2d 437, 221 N.E.2d 16, the addict-informant testified to the effect he had purchased narcotics from the defendant every day for about three months prior to the illegal drug sale with which the defendant was charged. The State elicited no such testimony in the case at bar.

■ In the present case, the testimony of which Huffman complains did not constitute evidence of other crimes because it did not directly implicate him in any drug dealings and did not indicate to the jury he had previously been found guilty of any criminal offenses. Instead, it merely indicated to the jury that in November 1986, Ferguson had told the OSI of his knowledge of other drug dealers in addition to those from whom he had directly purchased drugs. As the *circuit court* noted, the jury could have inferred from this testimony either (1) Ferguson knew or suspected Huffman was an illegal drug dealer because he had witnessed or had heard of Huffman selling illegal drugs to others, or (2) Ferguson had no such knowledge, and merely approached Huffman at random in an attempt to purchase cocaine from him. Since the State did not produce direct evidence Huffman was guilty of other crimes or had a reputation for being an illegal drug dealer, the admission of the evidence of which Huffman complains did not violate the terms of the order based on Huffman's motion *in limine*. Even if the testimony in issue were evidence of prior criminal acts on the part of Huffman, it would have been admissible under the identity exception to the rule which generally precludes admission of other crimes evidence. (See *People v. Lopez* (1957), 10 Ill. 2d 237, 139 N.E.2d 724, *cert. denied* (1957), 353 U.S. 975, 1 L. Ed. 2d 1138, 77 S. Ct. 1062.) For these reasons, we hold the circuit court did not err in admitting the testimony of Ferguson to which Huffman objects.

Huffman further argues the circuit court should have granted a motion for directed verdicts which he made at the close of the State's evidence and which he renewed at the conclusion of the defendant's case, because under the view of the evidence most favorable to the People, a reasonable mind could fairly have concluded his guilt was

not established beyond a reasonable doubt. Huffman also contends he should be granted a new trial because the jury's verdict was against the manifest weight of the evidence in that an opposite conclusion is clearly apparent.

The basis for Huffman's arguments concerning the sufficiency of the evidence to sustain his convictions is that in order to find him guilty, the jury would have had to either conclude (1) he was a drug dealer based on the purported evidence of other crimes previously discussed, or (2) he was a drug dealer on the basis of Ferguson's testimony, which was purportedly corroborated by the testimony of Bates. Huffman argues because Ferguson was a drug addict-informant, his testimony must be more closely scrutinized than under normal circumstances, and lack of corroboration of Ferguson's testimony would establish there was absolutely no credibility in the People's case against him. Huffman notes that when Ferguson agreed to cooperate with the authorities, he faced heavy penalties for the various offenses which he had committed and had written bad checks and cashed stolen checks to finance his drug habit. Huffman also notes Ferguson stole a portion of the illegal drugs which he obtained in the undercover operation in which he participated.

Huffman contends Bates cannot be considered a credible witness whose testimony corroborates that of Ferguson because of inconsistencies between Ferguson's testimony and Bates' testimony and inherent improbabilities in various aspects of Bates' and Ferguson's descriptions of the controlled purchases of cocaine from Huffman. Huffman asserts there are discrepancies in the testimony of Bates and Ferguson concerning: (1) the degree of training which Bates was given in looking and acting like an airman; (2) their descriptions of the Blue Island tavern, particularly the number of tables therein; (3) the order in which Bates, Ferguson, and Huffman entered the rest room at the time of the March 16, 1987, cocaine sale; (4) the degree to which Bates was able to see Ferguson when Ferguson was dancing and Bates' location when Ferguson was dancing; and (5) whether on April 8, 1987, Ferguson dropped one of the six packets of cocaine as he was giving it to Bates and whether another individual discussed proposed cocaine sales with Ferguson immediately after his controlled purchase of cocaine on that date.

Huffman further emphasizes the evidence does not completely exclude the possibility Ferguson received cocaine from someone other than him between the times Ferguson entered the Blue Island Tavern on the two evenings in question and the times Ferguson turned the packets of cocaine over to Bates on those two evenings. Finally,

Huffman states Ferguson knew $160 would purchase two grams of cocaine, but the two purported $160 payments to Huffman produced only 1.4 and 1.3 grams of cocaine, respectively. Huffman contends this creates an inference Ferguson stole or used some of the cocaine which he purportedly purchased from Huffman.

The State contends Ferguson's testimony was corroborated in all of its important aspects, and any inconsistencies in the testimony of Ferguson and Bates were matters of credibility, which were for the jury to consider and resolve. The State asserts considering the evidence in the light most favorable to the People, a reasonable jury could fairly have found Huffman guilty beyond a reasonable doubt. Also, the State argues the jury's verdict was not contrary to the manifest weight of the evidence, because it was not unreasonable.

■ At the outset, it does not appear Huffman filed a motion for a new trial based on the insufficiency of the evidence to support his convictions. In his post-trial motion, Huffman stated:

"14. That, notwithstanding the evidence of THE PEOPLE OF THE STATE OF ILLINOIS in failing to establish Defendant's guilt, the State's testimony viewed in its light most favorable to the State as the moving party, if believable at all, considering its broad and varied discrepancies created, at best, a close case. The accumulative [sic] effect of the instructions referred to above, considered with this Court's other errors, denied Defendant the right to a fair trial.

WHEREFORE, the undersigned prays that this Court enter an Order finding the Defendant not guilty, or in the alternative, that the Defendant be granted a new trial."

Except for contentions the circuit court erred in denying Huffman's motion for directed verdicts and a contention the evidence creates a reasonable doubt as to Huffman's guilt, the matter of the sufficiency of the evidence to support the jury's verdicts is not discussed elsewhere in Huffman's post-trial motion. Thus Huffman did not properly preserve for review his contention he should be granted a new trial because the jury's verdicts are contrary to the manifest weight of the evidence. Instead, he requested a new trial only on the basis of the cumulative effect of alleged trial errors. We need not, therefore, consider whether the circuit court erred in refusing to grant Huffman a new trial on the basis the jury's verdicts were contrary to the manifest weight of the evidence.

■ A motion for a directed verdict asserts only as a matter of law the evidence is insufficient to support a guilty verdict. In ruling on such a motion, the trial court need consider only whether a reason-

able mind could fairly conclude beyond a reasonable doubt the defendant is guilty, considering the evidence most strongly in the People's favor. (*People v. Withers* (1981), 87 Ill. 2d 224, 429 N.E.2d 853.) When the evidence in this case is considered in its light most favorable to the People, it supports the circuit court's denial of Huffman's motion for directed verdicts.

■ As Huffman points out, many cases hold the fact a witness is a police informer and narcotics addict has an important bearing on his credibility. While such a person is not technically an accomplice, the situation of such a witness is sufficiently similar to that of an accomplice to require close scrutiny of his testimony. (*E.g., People v. Perkins* (1962), 26 Ill. 2d 230, 186 N.E.2d 330; *People v. Villalobos* (1960), 20 Ill. 2d 315, 169 N.E.2d 745.) Where the State's case is premised on the testimony of such an individual, it is important his testimony be corroborated in some respect. *Perkins*, 26 Ill. 2d at 234, 186 N.E.2d at 332.

In the present case, there are some discrepancies in the testimony and pretrial statements of Bates, Ferguson, and others. For instance, Gary M. Wright, a Champaign police detective, testified Bates was given rather extensive instructions concerning how to look and act as an airman. Ferguson testified to the same effect. Bates, however, denied he was given a course concerning how an airman should act. Also, in a police report, Ferguson stated that on March 16, 1987, Huffman followed him and Bates into the rest room in the Blue Island tavern, while Ferguson and Bates testified at trial Huffman led the way into the rest room. Furthermore, Ferguson testified that on April 8, 1987, one of the six bags of cocaine fell to the floor as he was handing it to Bates and stated another individual discussed proposed cocaine sales with him (Ferguson) at the time. Bates, however, made no mention of such occurrences when Ferguson handed him the six packets of cocaine on April 8. (Ferguson did not unequivocally testify $160 would buy two grams of cocaine. Rather, he implied for $160, one could purchase approximately 1½ to 2 grams of cocaine, depending on who the dealer was.)

Huffman's argument the above matters weaken the credibility of the State's evidence overlooks some inconsistencies in the evidence which Huffman presented. For instance, Huffman implied on direct examination he spoke with Ferguson only once on the evening of April 8, 1987. However, he implied on cross-examination he spoke with Ferguson on at least two separate occasions on the evening of April 8. Also, John Rucks testified that on April 8, Huffman, after saying he did not want to mess around, left the pool table area of the

Blue Island Tavern alone. However, an investigator for the State's Attorney's office testified Rucks told him that on that evening, Huffman and the person to whom he had spoken left the pool table area together.

There are thus minor discrepancies in the testimony presented by both the State and Huffman concerning events immediately before and after the two controlled drug purchases which form the basis for Huffman's convictions. These discrepancies are, however, of no greater magnitude than might be expected when individuals are describing events which occurred at least six months previously. They do not weaken the credibility of Bates' testimony to the extent Bates' testimony provided no corroboration for that of Ferguson.

As noted by Huffman, a trier of fact could possibly infer from the evidence presented at trial Ferguson received cocaine from persons other than Huffman between the times he arrived at the Blue Island Tavern on the two evenings in question and the times Ferguson handed the packets of cocaine to Bates on those two evenings. However, a trier of fact could also have concluded, based on testimony Ferguson was searched before going to the Blue Island Tavern and testimony Bates kept Ferguson in his view at all times while in the Blue Island Tavern on the evenings of the two controlled drug purchases, Huffman and no one else gave Ferguson the cocaine which he turned over to Bates. In short, the question of whether Ferguson received from someone other than Huffman the cocaine which he turned over to Bates on the two evenings in question was a classic question for the trier of fact.

■■ ■ In concluding the circuit court properly denied Huffman's motion for directed verdicts, we note convictions of unlawful delivery of controlled substances have been upheld even where the informant was not searched prior to the transaction, and the informant testified he could not remember events on the day of the transaction (*People v. Mickelson* (1975), 32 Ill. App. 3d 813, 336 N.E.2d 806) and where the only evidence linking the defendant to the drug transaction was the testimony of an addict-informant and a tape recording of the transaction which recorded the persons present as conversing with an individual with the defendant's first name (*People v. Lee* (1987), 162 Ill. App. 3d 972, 516 N.E.2d 360). In the case at bar, there is obviously more evidence linking defendant to delivery of controlled substances than there was in *Mickelson* and *Lee*.

None of the cases relied upon by Huffman support his contention his motions for directed verdicts should have been granted. In *People v. Bazemore* (1962), 25 Ill. 2d 74, 182 N.E.2d 649, the illicit drug

transaction was not as closely supervised as those involved in the case at bar, and there was no evidence, aside from the addict-informant's uncorroborated testimony, the addict-informant obtained from the defendant the derivative of opium which he turned over to the police. Likewise, in *People v. Dade* (1969), 109 Ill. App. 2d 337, 248 N.E.2d 844, the illegal drug transaction was not as closely supervised as were the transactions which formed the basis for Huffman's convictions. Finally, in *People v. Rey* (1985), 136 Ill. App. 3d 645, 483 N.E.2d 982, the only question decided was whether the State may appeal a judgment notwithstanding a verdict entered in favor of a defendant in a criminal case. The court held the State may not appeal such a judgment and dismissed the appeal.

In an additional argument touching on Ferguson's credibility as a witness, Huffman asserts the circuit court erred in refusing to give the jury the following instruction which he tendered:

> "In judging the credibility of a witness, the fact that he is a narcotics addict has an important bearing on his credibility and you must carefully and closely scrutinize any testimony by that witness."

Huffman contends the circuit court should have given the jury this instruction because the testimony of Ferguson, who admitted to extensive drug usage, was an important part of the State's case against him. Huffman argues the present case is distinguishable from those in which it was held the circuit court properly refused similar instructions, because in those cases, unlike in the present case, there was insufficient evidence the witness was a drug addict. Huffman states his counsel's being permitted to elicit testimony concerning Ferguson's drug usage on cross-examination and his counsel's being permitted to comment on that subject in his argument to the jury was not an adequate substitute for a jury instruction concerning Ferguson's drug addiction.

Furthermore, Huffman asserts because the circuit court refused to give the jury his proposed instruction concerning the credibility of a drug addict, it should also have refused to give the jury Illinois Pattern Jury Instructions, Criminal, No. 1.02 (2d ed. 1981) (hereinafter IPI Criminal 2d), which informs the jury it is the sole judge of the believability of the witnesses and of the weight to be given their testimony. Huffman asserts the giving of IPI Criminal 2d No. 1.02 without his proposed instruction placed his testimony in the same category as that of Ferguson. Huffman also contends because the jury was instructed statements or arguments of counsel are not evidence (IPI Criminal 2d No. 1.03), the circuit court's stated belief argument of de-

fense counsel was an adequate substitute for Huffman's proposed instruction "*cannot* be logically advanced." Huffman concludes in view of the instructions given in this case, it is unreasonable to assume a jury would closely scrutinize the testimony of a narcotics addict.

The State argues the trial court usurps the jury's fact-finding function when it instructs the jurors the testimony of certain witnesses is subject to suspicion and should be considered with caution. The State maintains even in the absence of cautionary instructions, jurors will be aware of the factors which make some witnesses unreliable. Thus, the State argues, there is a significant difference between the need for general instructions which explain such things as the State's burden of proof and the elements of offenses, and instructions which specifically tell jurors how to evaluate certain evidence. For these reasons, and because Huffman's attorney thoroughly attacked Ferguson's credibility and argued Ferguson's testimony was not worthy of belief, the State contends Huffman's proposed cautionary instruction was not necessary in order to ensure a fair trial.

In his reply argument, Huffman states the present case is distinguishable from those which hold instructions similar to his proposed instruction were properly refused, because none of those cases involved a drug addict who was also a police informant.

In *People v. West* (1987), 156 Ill. App. 3d 608, 509 N.E.2d 153, this court recently upheld a circuit court refusal of a non-IPI instruction which stated the testimony of a witness who was addicted to drugs is subject to suspicion, should be considered with caution and should be carefully examined in light of the other evidence in the case. In *West*, the victim of the offense, who was the State's key witness, had been addicted to cocaine and at the time of the trial was still receiving psychiatric treatment for drug use. The defendant's counsel presented without objection closing argument to the effect this witness' drug addiction and schizophrenia severely diminished his credibility as a witness.

This court held the defendant's proposed instruction would have unduly highlighted the testimony of the complaining witness and one particular aspect of his observation or ability to perceive. This court stated the general trend in IPI instructions is away from instructions which comment on particular types of evidence or give undue emphasis to parts of the evidence in a case. This court observed the evidence did not show the complaining witness was addicted to drugs at either the time of the events as to which he testified or at the time of trial. This court concluded in view of the defendant having been allowed to elicit evidence concerning the complaining witness' drug ad-

diction and to present closing argument as to this matter, the proposed instruction was unnecessary.

■■ No Illinois cases have specifically held the trial court erred in failing to give a proposed instruction concerning the effect of a witness' drug addiction on the witness' credibility. In *People v. Phillips* (1970), 126 Ill. App. 2d 179, 261 N.E.2d 469, the appellate court held the circuit court properly refused an instruction to the effect the testimony of a narcotics addict is to be regarded with great suspicion. The basis for the appellate court's decision was the final clause of the proposed instruction contained an incorrect statement of the law. As an additional basis for holding the circuit court properly refused to give the instruction which the defendant tendered, the court held the circuit court properly gave the jury another instruction which stated the testimony of an addict is to be scrutinized with great caution and a finding a witness was an addict or used narcotics at about the time of the alleged crime would be an important factor going to the general reliability of the witness. The court did not, however, cite any authority which holds the giving of such a jury instruction is proper.

Although *Phillips* was decided after the first IPI criminal instructions were published in 1968, the decision does not take account of the trend away from comment on specific types of evidence or specific aspects of a case which is apparent in the IPI instructions. For this reason, we decline to follow the *Phillips* opinion to the extent it is inconsistent with the decision which we here reach.

Contrary to a statement in Huffman's reply brief, the court in *People v. Smith* (1979), 70 Ill. App. 3d 250, 387 N.E.2d 901, did not expressly endorse the giving of a jury instruction similar to that which Huffman requested. Rather, in accordance with the general trend of IPI instructions, the court stated, *inter alia*, such an instruction singles out the testimony of the addict as noncredible and usurps the function of the jury to determine the credibility of witnesses.

The remaining cases on which Huffman relies, *People v. Bazemore* (1962), 25 Ill. 2d 74, 182 N.E.2d 649, and *People v. Boyd* (1959), 17 Ill. 2d 321, 161 N.E.2d 311, both involved bench trials. No jury instruction questions were addressed, and these cases are therefore of no direct relevance to the case at bar.

In the present case, like in *West*, one of the State's key witnesses admitted to extensive prior usage of drugs. Unlike in *West*, the witness acknowledged once one is addicted to drugs one is always addicted. This statement does not, however, amount to clear evidence Ferguson was actually addicted to drugs at either the time of the controlled drug purchases or at the time of Huffman's trial. Thus, as in

*West,* the evidence did not clearly establish a key witness was addicted to drugs at either the time of the occurrences to which he testified or at the time of the defendant's trial.

Huffman's attempt to distinguish the present case from *West* and other decisions to the same effect on the basis the witness in this case was both a police informant and a drug addict is unavailing. Huffman's proposed instruction says nothing about Ferguson's status as an informant. Therefore, Ferguson's status as an informant is of no consequence to the question of whether the circuit court properly refused Huffman's proposed instruction. (*Cf. People v. Hawes* (1956), 8 Ill. 2d 501, 134 N.E.2d 781 (trial court has no duty to give correct jury instructions favorable to defendant on its own motion).) Even if Huffman had tendered an instruction commenting on Ferguson's status as an informant, this instruction would have been improper under the rationale of *West* and similar cases.

The present case is on all fours with this court's recent decision in *West,* and Huffman presents no cogent reasons for abandoning or modifying the holding of *West.* We therefore hold the circuit court properly refused Huffman's proposed instruction concerning the credibility of drug addicts as witnesses.

■ The circuit court also did not err in refusing Huffman's proposed instruction but nevertheless giving the jury IPI Criminal 2d No. 1.02. The version of the latter instruction which was given the jury provides in pertinent part:

"You are the sole judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory *** and the reasonableness of his testimony considered in the light of the evidence in the case."

This instruction did not preclude the jurors from considering evidence concerning Ferguson's drug addiction in evaluating his credibility as a witness. To the contrary, in advising the jurors they could take account of a witness' ability and opportunity to observe, it permitted them to consider Ferguson's drug addiction in evaluating his credibility.

■ Huffman's argument he was prejudiced by the circuit court instructing the jury statements of counsel are not evidence, while refusing Huffman's proposed instruction, is ludicrous. The instruction concerning statements of counsel (IPI Criminal 2d No. 1.03) reads in part:

"Closing arguments are made by the attorneys to discuss the

facts and circumstances in the case, and should be confined to the evidence and to reasonable inferences to be drawn from the evidence. Neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded."

This instruction does not advise the jurors they are to disbelieve statements of counsel which recite the evidence presented at trial, insofar as they find those statements consistent with the evidence which was actually presented at trial. This instruction thus did not preclude the jurors from considering the evidence concerning Ferguson's drug addiction which Huffman's counsel mentioned in his closing argument, to the extent counsel accurately described the evidence.

We finally consider Huffman's contention the sentences imposed upon him represent an abuse of the circuit court's discretion. Huffman's presentence report, filed November 17, 1987, lists his current employment as "odd jobs." The report further indicates that from November 7, 1977, until June 22, 1983, Huffman was employed by the Illinois Department of Transportation as a highway maintenance equipment operator, at a monthly salary of $1,808. Huffman's job performance and dependability were rated "below average," and he was discharged "for cause." Huffman reported there was a " 'lack of communication,' " and he apparently " 'disobeyed work orders' " when he did not " 'return to work after serving jury duty.' " From 1983 until the time of the presentence report, Huffman had been unemployed except for occasional odd jobs such as landscaping work and snow removal. Huffman reported he owned a restaurant from July 1986 through July 1987, but the probation officer had not received verification of this. At the time a report concerning Huffman's suitability for the Intensive Probation Supervision Program was filed on November 23, 1987, Huffman had, however, obtained employment with Donley Construction.

Huffman has a 15-year-old daughter (not born to his present wife) who resides with her mother. At the time Huffman's presentence report was prepared, his wife was pregnant and was due to give birth in February 1988. Huffman provided support for his daughter when he could.

In 1972, Huffman was convicted of the offense of having no firearm owner's identification card, for which he was fined $75 plus costs. In 1975, Huffman was fined $50 plus costs for unlawful use of a weapon.

At Huffman's sentencing hearing, Charles E. Duckworth, Jr., age

17, testified he has known Huffman for four to five years. Both Duckworth's mother and father were drug addicts. His father's 1984 death was drug-related, and Duckworth's mother became a prostitute. With Huffman's assistance, Duckworth was able to remain in school, became an honor student, and decreased his use of marijuana to once or twice per month. In essence, Huffman had become a sort of surrogate father to Duckworth. Duckworth testified on both direct and cross-examination he had seen Huffman use drugs.

In support of his argument the circuit court abused its discretion in sentencing him, Huffman asserts: (1) the evidence demonstrates he was only an occasional distributor of cocaine, and he did not initially approach Ferguson in an effort to sell cocaine; (2) only a small amount of cocaine was involved in the offenses of which he was convicted; (3) his offenses did not threaten serious physical harm to another; (4) he has a family to support; (5) at trial, he told the truth and was not inconsistent in his story, and the circuit court may have imposed eight-year sentences because he asserted his innocence; (6) although he has two firearms offense convictions which are over 10 years old, he has no prior controlled substances convictions; and (7) his sentences effectively negated any possibility of rehabilitation.

Also, Huffman asserts it is apparent from the transcript of his sentencing hearing the trial judge initially had difficulty remembering the facts and circumstances of this case and distinguishing it from other cases involving similar controlled drug purchases. Huffman argues because the circuit court did not clearly recall the evidence presented at trial, it could not have fairly and properly evaluated the facts and circumstances of this case in imposing sentence.

Huffman requests his sentences be vacated and this cause remanded to the circuit court for resentencing before a different judge. Alternatively, Huffman requests we reduce the length of his concurrent prison sentences.

The State asserts the eight-year sentences imposed on Huffman did not represent an abuse of the circuit court's discretion when it is considered the circuit court could have sentenced Huffman to 15 years' imprisonment on both counts. Also, the State points out Huffman failed to raise the issue of the trial court's possible confusion of his case with other similar cases during the circuit court proceedings and argues this matter was thus waived. The State also asserts the record reveals the circuit court was aware of the evidence presented at trial, and Huffman's sentences were not, therefore, products of plain error.

Unlawful delivery of more than 1 gram but not more than 15

grams of any substance containing cocaine is a Class 1 felony. (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(2).) A sentence of imprisonment of not less than 4 years nor more than 15 years may be imposed for a Class 1 felony. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(4).) As Huffman notes, section 100 of the Illinois Controlled Substances Act provides:

"It is not the intent of the General Assembly to treat the unlawful user or occasional petty distributor of controlled substances with the same severity as the large-scale, unlawful purveyors and traffickers of controlled substances. To this end, guidelines have been provided, along with a wide latitude in sentencing discretion, to enable the sentencing court to order penalties in each case which are appropriate for the purposes of this Act." Ill. Rev. Stat. 1985, ch. 56½, par. 1100.

■ The record does not establish the sentences imposed on Huffman were a manifest abuse of the circuit court's discretion. Although Ferguson did initially request Huffman sell him cocaine, Huffman apparently obtained the cocaine after Ferguson's March 11, 1987, request and on his own initiative returned to the Blue Island Tavern on March 16, 1987, to sell the cocaine to Ferguson. There is no indication the circuit court imposed eight-year sentences because Huffman asserted his innocence. Furthermore, the fact there is only one significant inconsistency in Huffman's testimony does not in itself provide a basis for holding the sentences here in issue were an abuse of the circuit court's discretion.

Also contrary to Huffman's contentions, it cannot be said the sentences imposed upon him effectively negated the possibility of rehabilitation. Rather, given Huffman's age (38) and possible good-time allowances, the sentences imposed on Huffman leave available opportunity for his rehabilitation.

Moreover, the evidence does not clearly support the conclusion Huffman was only an occasional petty distributor of cocaine within the meaning of section 100 of the Controlled Substances Act. Instead, one could reasonably conclude on the basis of Huffman's two cocaine sales to Ferguson, as well as on the basis of the inference Ferguson had knowledge of drug dealing on the part of Huffman prior to March 16 and April 8, 1987, Huffman dealt in cocaine or other illegal narcotics on a fairly regular basis.

The record does reflect that at Huffman's sentencing hearing, the court initially had difficulty recalling the exact circumstances of Huffman's offenses. Subsequent to this, however, both the assistant State's Attorney and Huffman's counsel fully discussed and described

the circumstances of Huffman's offenses. The circuit court did not thereafter indicate it was confused as to the facts of Huffman's offenses. For these reasons, Huffman's argument as to the circuit court's possible confusion of his case with other similar cases is without merit, and it is unnecessary to consider whether this argument has been waived.

Although the record is not totally devoid of factors which would support lesser sentences than those which the circuit court imposed, the sentences which the circuit court imposed on Huffman do not represent a manifest abuse of the court's discretion and do not amount to a substantial departure from the spirit and purpose of the law. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) While the sentences imposed on Huffman may result in hardship to his family, the circuit court could reasonably have concluded intermediate range sentences were necessary in order to deter others from engaging in illegal drug dealing and thus to some extent protect the public from the multitudinous problems caused by drug dealers making illegal drugs available to members of the public.

The cases relied upon by Huffman do not require a different result. In *People v. Mikesell* (1973), 12 Ill. App. 3d 382, 297 N.E.2d 590, this court did not reduce or reverse the defendant's sentence. *People v. Oravis* (1980), 81 Ill. App. 3d 717, 402 N.E.2d 297, and *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 364 N.E.2d 491, both involved defendants who, unlike Huffman, had no prior criminal convictions. Finally, in *People v. Honn* (1977), 47 Ill. App. 3d 378, 362 N.E.2d 90, it was apparent the circuit court did not consider the individual circumstances of each defendant in imposing sentence. Moreover, the record supported the conclusion defendants were most likely only occasional petty distributors of illegal drugs. This is not true with respect to the case at bar.

For all of the above reasons, Huffman's convictions and sentences are affirmed.

Affirmed.

LUND and GREEN, JJ., concur.