THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BOBBY L. ANDERS, Defendant-Appellant.

Fourth District   No. 4—91—0753

Opinion filed May 7, 1992.

Theodore A. Gottfried, of State Appellate Defender's Office, and Brown, Hay & Stephens, both of Springfield (Emmet A. Fairfield, of counsel), for appellant.

Scott H. Walden, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant Bobby L. Anders was convicted by an Adams County jury of unlawful delivery of less than one gram of a controlled substance containing cocaine (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(d)), and unlawful delivery of one or more grams, but less than 15 grams of a controlled substance containing cocaine (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(c)(2)). He was sentenced to concurrent three- and six-year terms of imprisonment and fined $1,500 and a street-value fine of $150. He argues the evidence was insufficient to convict him of either offense and the trial judge abused his discretion in sentencing him. We disagree and affirm.

Defendant was indicted by the Adams County grand jury on January 28, 1991. Count I alleged defendant committed the offense of unlawful delivery of a controlled substance by knowingly and unlawfully delivering less than one gram of a substance containing cocaine. Count II alleged defendant and Joseph E. Peters committed the offense of unlawful delivery of one or more grams, but less than 15 grams of a substance containing cocaine. Count III alleged defendant committed narcotics racketeering by receiving income while knowing that income was derived from a pattern of narcotics activity. (Ill. Rev. Stat. 1989, ch. 56½, par. 1654(a).) Count III was dismissed before defendant's jury trial began.

The trial occurred on May 13 and 14, 1991. Defendant's activities at issue in the trial occurred on September 20, 1990. On that day Mark Brinks, a State witness, was involved in an Illinois State Police undercover drug operation directed at defendant. Brinks knew defendant through playing pool. Several months earlier a friend of defendant's, Joey Peters, had begun working for Brinks doing remodeling work. When Brinks occasionally needed extra laborers, defendant also worked for him. Brinks testified he had pur-

chased cocaine from defendant several times during the last two months. These transactions occurred at Brinks' residence and at defendant's home. Brinks paid $100 a gram for the cocaine.

On September 19, Brinks arranged to buy an "eight ball" of cocaine from defendant. An "eight ball" is 3½ grams. Brinks testified defendant said he would bring the drugs to Brinks' house at 3 p.m., September 20. On the morning of September 20, Brinks phoned the Illinois State Police. Officers Ray Nebe and Debra Hedden arrived at Brinks' home at approximately 2:15 p.m. When they arrived, Nebe searched him and Hedden gave him a $100 bill. Nebe departed after the pat-down search.

Defendant and Joey Peters arrived at Brinks' home at approximately 2:30 p.m. Brinks and Hedden were sitting at the kitchen table. When defendant and Peters entered, they sat at the table and talked. Then defendant said to Brinks, "[C]ome here I want to talk to you." Defendant and Brinks entered the bathroom. According to Brinks, defendant had a folded package and told him he "got that stuff," but asked who the girl was. Although Brinks told him she was his friend, defendant said he did not want to do anything in her presence. He gave Brinks the package and Brinks gave it back to him, stating, " '[s]he's the one buying it. I would just as soon you sell it to her.' " Defendant refused and returned the package to Brinks. Brinks took the package and gave defendant a $100 bill. They returned to the kitchen.

Brinks identified People's exhibit No. 1 as the Marlboro package which defendant handed to him in the bathroom. Officer Hedden could not observe Brinks and defendant in the bathroom from where she sat in the kitchen. Brinks and defendant returned to the kitchen table and sat down. Brinks opened the Marlboro package containing a white powdery substance, which he tasted. He handed the package to Hedden and asked defendant if he could get more. Defendant indicated he would need $150 to obtain the additional cocaine. Brinks asked defendant if it would be "just as good as this." Defendant said it would be "just as good as that or better." Brinks told Hedden to give defendant the money. She gave Brinks $160 and he gave it to defendant. Defendant said he would be gone no longer than one hour and Brinks should stop by his house. Defendant told Brinks he should stop by when he saw defendant's truck parked outside. Defendant left with Peters.

An hour later, Hedden and Brinks went to defendant's house. They did not see defendant's truck. A short time later they returned to defendant's house and found Peters outside. Peters told

them to go to a tavern for a while and come back shortly. They drove past again and did not see defendant's truck. At 5 p.m. Hedden dropped Brinks off at a clinic where his wife worked.

Brinks testified that he had a cocaine habit. According to him, in September 1990 he was not using cocaine heavily, but was using it on a weekly basis. Before this date, he used cocaine daily. He also admitted that in consideration of his participation in this undercover operation, a traffic offense of driving while his license was suspended was dismissed.

On cross-examination, Brinks stated he thought he directed defendant into the bathroom during the first alleged drug delivery, rather than defendant directing Brinks. He agreed the search performed on him was a pat-down search and his house was not searched before the alleged initial drug delivery which occurred there. Brinks also admitted having a cocaine problem for four or five years. He had sought treatment about two years earlier but was not receiving any aftercare. Brinks had told the grand jury defendant tempted him so much he finally starting doing cocaine again. He admitted on cross-examination that he had asked defendant to get him cocaine. Brinks stated he had been a confidential source on approximately 10 occasions and was familiar with procedures used by DCI and the Illinois State Police in drug transactions.

Brinks testified the police told him to have someone with him when he purchased the drugs from defendant. He did not tell defendant someone would be with him at his home when defendant was to deliver the drugs because he feared defendant would think the person was a police officer. Brinks stated he already had a reputation in Quincy for being a snitch. He denied the Marlboro pack with the cocaine was in the bathroom when defendant arrived.

Hedden testified about her participation in the undercover drug operation. She was employed with the West Central Illinois Task Force through an arrangement with the Brown County sheriff's department. Her role in the investigation was to deliver the money and receive the drugs. Her testimony about what occurred when defendant arrived at Brinks' home on September 20 comported with Brinks' testimony. She testified defendant initiated his exit with Brinks from the kitchen area. From where she was seated, she could not observe Brinks and defendant in the bathroom. When they returned a few minutes later, Brinks had a small red package in his hand and defendant had a large roll of bills with him. She did not see defendant with the $100 bill she had given Brinks.

Hedden identified the package Brinks had returned with as the People's exhibit No. 1, the Marlboro package. Her testimony was also the same as Brinks' regarding defendant's assurance that the additional amount of cocaine which Brinks had asked to purchase would be as good or better as the cocaine in Brinks' possession after he and defendant returned from the bathroom. Defendant said something about being short. Brinks asked her for an additional $100, which she gave him. Defendant stated he needed $150. Hedden gave Brinks three $20 bills, which he also gave to defendant.

Hedden testified defendant then said he would be back within 45 minutes to an hour and that she and Brinks should meet him at his house. Defendant showed them a green truck in the driveway and said when it was there he would be home. Hedden never saw defendant again. After defendant left, she and Brinks went to her Quincy office where she performed a field test on the powder in the Marlboro package.

She testified she and Brinks drove by defendant's home several times to no avail. When they drove by about 4:30 p.m., Peters was in the yard and they stopped. Brinks asked where defendant was, to which Peters stated, "[w]ell it takes awhile to get it, [h]e'll be back any minute." They returned about 15 minutes later and defendant had not returned. They spoke with Peters again. Brinks needed to go home so Hedden dropped him off at the clinic where his wife worked.

Hedden returned to defendant's house, where she again met Peters. He told her defendant would not like her hanging around and suggested she go to a corner bar and wait. He told her he would go with her to wait. She went to the bar and waited for about 20 minutes; however, Peters never arrived. She received a radio message that defendant's green truck was in front of his house. She returned to defendant's house and Peters was again in the front yard. He approached her car and told her he would return in a minute.

Peters went into defendant's house and returned to the driver's side of Hedden's vehicle. He slipped his hand through the window and dropped a "white snow seal" into her hand. A snow seal is a small white square of paper used to package cocaine. She asked Peters, " 'Is this some of the same stuff?' " She also asked where defendant was, and did he not trust her, to which Peters replied, " 'Oh, you know how it is.' " Peters asked her to do some cocaine with him. She replied she did not have time, and she left the premises. She identified People's exhibit No. 2 as the snow seal she received from Peters.

On cross-examination, Hedden stated Brinks arranged everything before the transaction which occurred at his house. His house had not been searched before the transaction to ascertain that he did not possess drugs. She could not hear the transaction between Brinks and defendant and no recording or video devices were used. Regarding the transaction with Peters, Hedden conceded she never saw defendant return in the truck. She never saw defendant in his house and did not know who may have been in the house.

Mike Cravens, a forensic scientist for the Illinois State Police, testified about the procedures he used to conclude the substances at issue were cocaine. On cross-examination, Cravens stated no requests were made to test the packaging in which these substances were found for fingerprints. It is possible to test paper and foil packages for fingerprints; however, a fingerprint does not always result when someone touches a surface. He also testified fingerprint tests are routinely requested, but not usually granted because of the volume of exhibits which are analyzed.

Defendant took the stand in his own defense and testified he knew Brinks from having played pool together. He knew Brinks was looking for workers, so he told Brinks that he and Peters would work for him. According to defendant, he worked for Brinks approximately 10 times and was paid $5 per hour in cash. Defendant stated he and Brinks occasionally did cocaine when they worked together. He testified he went to Brinks' house on September 20 to get $80 to $90 in pay due him. Peters accompanied defendant to Brinks' home because Brinks also owed him back pay.

According to defendant, when he and Peters arrived, Brinks and Hedden were sitting at the kitchen table. Brinks began to talk about cocaine and asked him if he could get some cocaine. Defendant said to Brinks, " 'I need to talk to you.' " Brinks led him into the bathroom and asked defendant to go along with what he was doing. Defendant agreed. When they exited the bathroom, defendant testified Brinks had a seal. Defendant did not know where the seal came from. According to defendant, while they were in the bathroom, Brinks intimated he was sexually involved with Hedden.

When they returned to the kitchen, Brinks asked defendant if he could get more cocaine. Defendant responded affirmatively. Defendant testified he responded in this way because of Brinks' request that he go along with whatever Brinks requested. Brinks handed him three more $20 bills. Defendant and Peters departed. Defendant went to play pool for 1½ or 2 hours. He did not know when he arrived home. He testified he did not bring cocaine to

Brinks' home and he did not tell Peters what to do in the second transaction. He also testified he did not drive anywhere for more cocaine and knew nothing about the second transaction.

On cross-examination, defendant stated he asked Brinks to speak with him outside of Hedden's presence. He drove to see Brinks in a green truck. He told Brinks that if he needed to contact him, he would be home when the green truck was at his house. Peters lived with him at that time. Defendant denied dealing cocaine. The defense rested.

The State recalled Brinks in rebuttal. Brinks stated he did not owe defendant back pay. Although the bathroom had not been searched before defendant arrived, defendant handed him the cocaine in the bathroom. Following closing arguments and deliberations, the jury found defendant guilty of both counts.

Defendant's sentencing hearing occurred July 15, 1991. The presentence investigation established defendant was 27 years old and married with two children. Defendant had not used alcohol or cocaine since his arrest. His family was receiving public aid and food stamps and he was employed four to six hours a day as a dishwasher. He was attending counseling sessions regularly.

Defendant had been placed on juvenile probation for misdemeanor theft in 1980 and successfully completed his probationary period. He had several speeding tickets and minor traffic violations between 1981 and 1990.

Jay Carlton, of the West Central Illinois Task Force, testified for the State. He stated he overheard a conversation between defendant and a confidential source at a bar in April 1991. Defendant reportedly stated the police did not know what was going on and that defendant could sell here if he wanted.

Defendant offered evidence in mitigation. He testified he saw Carlton at a bar in April, but did not talk to him. He had spoken with Denise Bennett, the reported confidential source. According to him, Bennett wanted to buy an eight ball. Defendant indicated he was in trouble and wanted no part of a drug transaction. He denied bragging about selling drugs. He had learned not to use drugs, was receiving counselling regularly, and was trying to spend more time with his wife and family. Defendant felt he could be successful on probation and was willing to comply with any conditions of probation including abstinence from alcohol or drugs.

Defendant's wife testified defendant had changed since his arrest. He works and spends more time with the family. His relation-

ship with her and with his family has improved. She felt defendant had learned from this experience.

Bruce Rice, a pastor at Trinity Assembly Church, testified he had known defendant's family for approximately seven years and had known defendant for about six months. He became acquainted with defendant during the last illness of defendant's father, at which time defendant controlled the situation and assumed a lot of responsibility. Since that time, God had taken root in defendant's life. Rice stated defendant had a very strong and close-knit family which is supportive of him and defendant was remorseful and wants to take control of his life.

The trial judge sentenced defendant to three years' imprisonment on count I, and six years' imprisonment on count II. He also levied a street-value fine of $150 and a cash fine of $1,500 against defendant. Defendant's motion to reduce sentence was denied.

Defendant first argues the evidence was insufficient to convict him of count I, unlawful delivery of less than one gram of a controlled substance containing cocaine. (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(d).) He specifically contends the evidence did not establish beyond a reasonable doubt that he delivered cocaine to Brinks. He points to Hedden's testimony that the investigation did not follow usual procedures because she did not directly pay the money to defendant or receive the drugs from him. Moreover, the transaction did not take place in her presence.

Defendant also attacks the reliability of Brinks' actions because Brinks was a cocaine user and had initiated the undercover operation to clear a charge of driving while his license was suspended. Defendant also criticizes the investigation leading to the initial drug purchase and preceding it. Testimony established only a pat-down search was performed on Brinks before he allegedly purchased the drugs from defendant. Defendant also correctly notes the Marlboro package which contained the cocaine was never tested for fingerprints. These investigatory holes, according to defendant, defeat any possibility of a finding of his guilt beyond a reasonable doubt.

To determine the sufficiency of the evidence, a court of review views the evidence most favorably to the prosecution and queries whether any rational trier of fact could have found defendant guilty beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277; *People v. Govin* (1991), 213 Ill. App. 3d 928, 930, 572 N.E.2d 450, 452.) The evidence in this case supports an affirmative conclusion. Defendant incorrectly contends the

sole evidence that he delivered an unlawful substance to Brinks was Brinks' testimony.

■■ Hedden's testimony comported with Brinks' testimony about the events which occurred September 20. Although Hedden could not observe Brinks and defendant while they were in the bathroom, she saw defendant return to the kitchen with money in his hand and Brinks returned with a red package containing cocaine. She also testified Brinks tasted the contents of the package and asked defendant if the next order would be as good, to which defendant responded that it would be as good or better.

Defendant correctly notes testimony by an informant who himself abuses unlawful substances and who participates in an undercover operation to minimize punishment for his own illegal activity should be closely scrutinized. (*People v. Perkins* (1962), 26 Ill. 2d 230, 234, 186 N.E.2d 330, 332; *People v. Huffman* (1988), 177 Ill. App. 3d 713, 723, 532 N.E.2d 556, 562.) Brinks admitted using cocaine on a weekly basis and previously sought treatment for a daily addiction. He also testified he contacted law enforcement authorities to assist in an undercover operation so that he could obtain a dismissal of a pending traffic charge. His drug use, combined with his reason for testifying, made his testimony suspect.

Defendant fails to recognize that when this testimony is partially corroborated, the reasonable doubt threshold can be overcome. (*Perkins*, 26 Ill. 2d at 234, 186 N.E.2d at 332; *Huffman*, 177 Ill. App. 3d at 723, 532 N.E.2d at 562.) Hedden's testimony corroborated Brinks' testimony about what transpired when defendant and Peters arrived at Brinks' house. Defendant summoned Brinks into another room. When they returned, defendant told Brinks—in Hedden's presence—that the next order of cocaine would be as good or better.

In addition, defendant argues Brinks' testimony could not be relied on because law enforcement officials failed to search Brinks' home, or in particular, the bathroom, before the drug transaction occurred. The State's case against a defendant is not defeated merely because a government agent is not searched for narcotics before the agent purchases unlawful substances from defendant. This inaction goes only to the weight to be afforded the agent's testimony. *People v. Clay* (1963), 27 Ill. 2d 27, 32, 187 N.E.2d 719, 722; *People v. Guido* (1962), 25 Ill. 2d 204, 209, 184 N.E.2d 858, 861.

Moreover, the evidence here established a pat-down search was performed on Brinks before the transaction. Defendant testified he

led Brinks to the bathroom. The jury could reasonably have believed Brinks could not have anticipated defendant would lead him to the bathroom and, therefore, it was highly unlikely Brinks had unlawful substances stashed there with which to frame defendant. The record established the jury could reasonably have concluded defendant unlawfully delivered less than one gram of an unlawful substance to Brinks on September 20, 1990.

Defendant next argues the evidence was insufficient to convict him of count II, unlawful delivery of one or more grams, but less than 15 grams of a controlled substance containing cocaine. (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(c)(2).) He was convicted of this offense based on an accountability theory. The prosecution argued defendant was legally responsible for the delivery of cocaine by Peters to Hedden.

Section 5—2 of the Criminal Code of 1961 outlines when an individual is legally accountable for another's conduct:

> "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1989, ch. 38, par. 5—2(c).

The standard of review is again whether any rational trier of fact could have found defendant guilty based on the accountability theory. (*Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277; *Govin*, 213 Ill. App. 3d at 930, 572 N.E.2d at 452.) The evidence was sufficient for the jury to hold defendant accountable for the delivery of the second packet of cocaine by Peters to Hedden.

The Illinois Supreme Court has concluded it is not necessary to conclusively prove the particular capacity in which a defendant acted in an unlawful sale and delivery of narcotics case. (*People v. Aldridge* (1960), 19 Ill. 2d 176, 179, 166 N.E.2d 563, 565.) Furthermore, a defendant need not be present when the sale takes place nor need he be in possession of marked money. (*People v. Parks* (1978), 57 Ill. App. 3d 405, 408, 373 N.E.2d 783, 785.) A person who arranges or promotes the sale of narcotics is as guilty of the sale as the actual seller of the drug involved. *People v. Banks* (1968), 103 Ill. App. 2d 180, 190, 243 N.E.2d 669, 673-74.

Defendant relies on *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 461 N.E.2d 631, in arguing the State did not prove beyond a reasonable doubt that he solicited, ordered, abetted, aided or attempted to aid Peters in the commission of the count II offense of unlawful delivery. He contends the evidence is insufficient because

(1) the cocaine was delivered by Peters, not him; (2) the evidence did not establish defendant was the source of the cocaine delivered by Peters to Hedden; and (3) there was no evidence showing defendant solicited or ordered Peters to commit the offense of delivery.

In *Deatherage*, the defendant was not present during two meetings which occurred between the undercover agents and the other person charged with unlawful delivery. Moreover, the only contact defendant had with the unlawful transaction was that he was present at the home where the delivery occurred and he answered a question asked him about the price of the drugs. The court concluded the evidence established only that defendant was present and may have known about the transaction. *Deatherage*, 122 Ill. App. 3d at 623-24, 461 N.E.2d at 633-34.

■ Defendant's actions in this case suggested far more participation on his part than did the defendant's actions in *Deatherage*. There was testimony that, immediately after the initial sale, Brinks asked defendant if defendant could obtain more cocaine. Defendant answered that he could, and it would cost $150 and would take him no more than an hour to obtain it. Defendant told Brinks, in the presence of Hedden, that the additional cocaine would be as good or better than that initially delivered. Hedden gave Brinks $160. Brinks gave this money to defendant.

Defendant, in the presence of Hedden, told Brinks that when his green truck was in his driveway, it meant he was home and Brinks should stop. In addition, when Peters delivered the cocaine to Hedden in front of defendant's home, Hedden asked where defendant was and whether he did not trust her. Peters responded, " 'Oh, you know how it is.' " Defendant, unlike the defendant in *Deatherage*, was not merely present during the conversation leading to the drug delivery. Defendant participated by accepting the money from Brinks for the additional cocaine. He arranged the time and place for Brinks to obtain the narcotics. He also gave quality assurances. The jury could reasonably have concluded defendant obtained the second order of cocaine. The evidence was sufficient to establish defendant solicited, aided, or abetted the planning and commission of the unlawful delivery of cocaine.

Defendant finally argues the trial judge abused his discretion by sentencing him to prison rather than placing him on probation. He contends the judge failed to properly consider the mitigating factors presented at his sentencing hearing, resulting in an excessive sentence. He points to the following mitigating factors: (1) his criminal

conduct did not cause or threaten to cause physical harm to another (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.1(a)(1)); (2) he had no significant criminal history (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.1(a)(7)); and (3) his character suggests he is unlikely to commit another crime and particularly likely to comply with the terms of probation (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.1(a)(9)).

He argues the record reflects a supportive family and his imprisonment results in excessive hardship to his two young children. He also directs us to his statement that he has learned his lesson and he was willing to comply with any terms of a probationary sentence. Defendant correctly notes a trial judge shall impose a sentence of probation unless the nature and circumstances of the offense and the history and character of the offender convince him that imprisonment is necessary to protect the public. A prison term can also be imposed where the trial judge concludes probation would minimize the seriousness of the offense or be inconsistent with the ends of justice. Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—1(a)(2).

The trial judge found in aggravation that prior to the convictions, defendant had not been supporting his family, but had instead been living on his wife's money and using and probably selling cocaine. The trial judge concluded probation would diminish the seriousness of defendant's conduct and undermine the public's protection. He noted his concern that defendant was deeply involved with drugs.

The sentence imposed by a trial judge should not be overturned absent abuse of discretion. The trial judge's ruling is entitled to great deference and weight because the trial judge is better able to make a firsthand, reasoned judgment based on such factors as the defendant's general moral character, credibility, demeanor, social habits, and age. *People v. Streit* (1991), 142 Ill. 2d 13, 19, 566 N.E.2d 1351, 1353; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884; *People v. Bernotas* (1991), 215 Ill. App. 3d 371, 376, 574 N.E.2d 1236, 1239.

■ In this case, we find the trial judge did not abuse his discretion in imposing a prison term on defendant for each count of which he was convicted. The terms were also not excessive as they are well within the statutory limits. Unlawful delivery of less than one gram of a substance containing cocaine is a Class 2 felony, punishable by three to seven years' imprisonment and a maximum cash fine of $200,000. (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(d); ch. 38, par. 1005—8—1(a)(5).) Unlawful delivery of more than 1 gram but

less than 15 grams is a Class 1 felony, punishable by 4 to 15 years' imprisonment and a maximum cash fine of $250,000. Ill. Rev. Stat. 1989, ch. 56½, par. 1401(c); ch. 38, par. 1005—8—1(a)(4).

Defendant received the minimum prison term for his first conviction in count I and only two years more than the minimum term in count II. Significantly higher fines could also have been imposed against defendant. The court did not abuse its discretion in sentencing defendant.

Affirmed.

GREEN, P.J., and LUND, J., concur.