# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Crenshaw, 2011 IL App (4th) 090908**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL E. CRENSHAW, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-09-0908 |
| Argued<br>Filed | June 21, 2011<br>August 10, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for the criminal sexual assault of his daughter was upheld over his contentions that his confession was involuntary due to his attempt to commit suicide by taking an overdose of medication and that his daughter's recording of the incident on her cell phone was inaudible and irrelevant and should not have been admitted in evidence. |
| Decision Under Review | Appeal from the Circuit Court of Brown County, No. 09-CF-5; the Hon. Diane M. Lagoski, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Karen Munoz, and Catherine K. Hart (argued), all of State Appellate Defender's Office, of Springfield, for appellant.

Mark J. Vincent, State's Attorney, of Mt. Sterling (Patrick Delfino, Robert J. Biderman, and Luke McNeill (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel    JUSTICE COOK delivered the judgment of the court, with opinion.
Justices Turner and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1    The trial court found defendant, Michael E. Crenshaw, guilty of criminal sexual assault (720 ILCS 5/12-13(a)(3) (West 2008)), a Class 1 felony (720 ILCS 5/12-13(b)(1) (West 2008)). Defendant committed an act of sexual penetration with his daughter, H.H., who was then 15 years old. The court sentenced defendant to eight years in the Illinois Department of Corrections. Defendant argues the court erred by (1) denying his motion to suppress his confession, (2) admitting H.H.'s cell phone recording, and (3) imposing an excessive sentence. We affirm the court's judgment.

¶ 2                    I. BACKGROUND
¶ 3    Defendant was charged with criminal sexual assault (720 ILCS 5/12-13(a)(3) (West 2008)), a Class 1 felony (720 ILCS 5/12-13(b)(1) (West 2008)), in that on or about February 9, 2009, he committed an act of sexual penetration with H.H. who was then 15 years old. Following a bench trial, defendant was convicted and sentenced to eight years in the Illinois Department of Corrections.

¶ 4    The evidence at trial was that on January 14, 2009, Kevin Kaufman, a special agent with the Illinois State Police, and other officers, interviewed defendant at the Mount Sterling police department regarding allegations of sexual abuse made by H.H. The interview occurred after H.H. stated to Matthew Boley, a school social worker, that defendant told her that he had sex with her five times. H.H. could not recall ever having sex with her father and felt he made those claims to induce her to have sex with him. The social worker reported the allegations to the Department of Children and Family Services. Defendant denied the allegations, and the Department of Children and Family Services determined the allegations were unfounded.

¶ 5    H.H. testified that in the early morning hours of February 9, 2009, defendant entered her bedroom and made her have sex with him. H.H. had planned for this in advance, because this

was not the first time defendant had entered her bedroom and demanded sex. She recorded the act on her cell phone, holding the phone in her hands while defendant forced himself on her. While defendant thought she was playing a game on the phone, H.H. was actually recording the act. H.H. then played the recording for her friends at school, and then for her stepmother, Stephanie Crenshaw, at home. After listening to the recording, Stephanie immediately left the home with her two younger children. When Stephanie confronted defendant about the recording, he said that he had gone up to H.H.'s room, but it was only to get a massage. Later that same day, H.H. called the police from a friend's house to report the sexual assault. Deputy sheriff Justin Oliver went to H.H.'s friend's house and listened to the recording. Before Oliver left the house, H.H. gave him the phone. The next day defendant called in sick to work.

¶ 6     On February 10, 2009, Special Agent Jason Garthaus of the Illinois State Police began looking for defendant to question him concerning H.H.'s allegations. Garthaus saw defendant riding his motorcycle toward his residence. Shortly thereafter, Agent Kaufman contacted defendant via telephone. Defendant agreed to meet with the police and asked them to pick him up at his residence because he was tired and did not want to drive. Agents Kaufman and Garthaus picked defendant up at about 5:30 p.m. Defendant walked out to the agents' truck without assistance. Defendant told Garthaus that he had taken four sleeping pills, two more than usual, since he was tired and wanted to go to sleep. Garthaus could tell that defendant was tired, but other than that defendant appeared to be fine. Before starting the interview, Kaufman gave defendant *Miranda* warnings. See *Miranda v. Arizona*, 384 U.S. 436 (1966). At 5:44 p.m., defendant signed a *Miranda* waiver.

¶ 7     During the interview, defendant said that he went to H.H.'s room to get a back rub, during which H.H. "touched his penis a couple of times." Approximately five hours into the interview, Kaufman presented defendant with an inculpatory scenario, and in response, defendant said, "I guess." After the interview, defendant was taken to Schuyler County jail.

¶ 8     Defendant testified that on February 9, 2009, he had taken more than four sleeping pills, that he had taken 2 to 3 5-milligram tablets of hydrocodone, 2 20-milligram capsules of Adderall, 15 to 20 10-milligram tablets of cyclobenzaprine (muscle relaxant), and 30 to 40 tablets of trazodone (sleeping aid). Defendant stated he had earlier written a suicide note and then hid it. He later stated that he actually wrote three suicide notes and gave them to his stepmother three days after he got out of jail.

¶ 9     Defendant's expert, Dr. Robert Chapman, determined that during the February 10, 2009, interview, defendant suffered side effects from the overdose of medicines that he had taken for the purpose of committing suicide. Dr. Chapman found as follows: "The combination of the medicines are such as to cause unsteady gait, drowsiness, confusion, poor concentration, impaired body perceptions and impaired capacity to understand, comprehend and make rational judgments based on information provided or questions asked."

¶ 10     After the sentencing hearing, the trial court sentenced defendant as stated.

¶ 11     This appeal followed.

¶ 12                    II. ANALYSIS

¶ 13    On appeal, defendant argues the trial court erred by (1) denying his motion to suppress his confession, (2) admitting H.H.'s cell phone recording, and (3) imposing an excessive sentence.

¶ 14    The burden is on the State to establish by a preponderance of the evidence that the waiver of a defendant's *Miranda* rights was knowing, intelligent, and voluntary. *People v. Scott*, 148 Ill. 2d 479, 509-10, 594 N.E.2d 217, 228 (1992). If the State makes a *prima facie* case, then the burden shifts to the defendant to show the waiver was not knowing, intelligent, and voluntary. *Id*. at 510, 594 N.E.2d at 228.

¶ 15    After a drug has been administered to a defendant, the voluntariness of a statement made during a confession is a question to be decided by the trial court upon a motion to suppress. *People v. Kincaid*, 87 Ill. 2d 107, 117, 429 N.E.2d 508, 512 (1981). The fact that an accused is under the influence of drugs, self-administered or otherwise, when he or she makes a confession does not make the confession automatically inadmissible. *Id*. at 119, 429 N.E.2d at 513.

¶ 16    We apply a bifurcated standard of review to a trial court's determination as to whether a defendant's statement was voluntarily made. *People v. Westmorland*, 372 Ill. App. 3d 868, 876, 866 N.E.2d 608, 614 (2007). We accord great deference to a trial court's findings of fact and will not disturb those findings unless they are contrary to the manifest weight of the evidence. *Id*. (citing *In re G.O.*, 191 Ill. 2d 37, 50, 727 N.E.2d 1003, 1010 (2000)). We review *de novo* the ultimate question as to whether a confession was voluntarily made. *Westmorland*, 372 Ill. App. 3d at 876, 727 N.E.2d at 614. In determining voluntariness, courts must consider the totality of the circumstances. *People v. Evans*, 125 Ill. 2d 50, 77, 530 N.E.2d 1360, 1371 (1988).

¶ 17    Defendant claims the trial court's failure to suppress his confession was against the manifest weight of the evidence, because the side effects of the drugs he ingested before the February 9, 2009, interview rendered his confession involuntary. Defendant argues that at the time of the interview he was intoxicated to the point where his confession was not the product of free will. He felt "slobbering drunk" and needed assistance walking and standing. Defendant claims that after receiving the initial call from the police on February 10, 2009, in an attempt to commit suicide, he ingested 2 to 3 5-milligram tablets of hydrocodone, 2 20-milligram capsules of Adderall, 15 to 20 10-milligram tablets of cyclobenzaprine (muscle relaxant), and 30 to 40 tablets of trazodone (sleeping aid). Defendant also points to his responses in the police report as showing the mental impairment he was suffering from at the time of the interview. During the interview, defendant provided multiple nonverbal or monosyllabic responses to questions, including the final inculpatory scenario presented by the agents in which defendant responded, "I guess." To further support his involuntariness claim, defendant relies on Dr. Chapman's evaluation of how the drugs he claimed to have ingested would have impacted him. According to Dr. Chapman's report, the drugs would have caused defendant to suffer from a number of physical and mental impairments including "unsteady gait, drowsiness, confusion, *** impaired capacity to understand, comprehend and make rational judgments."

-4-

¶ 18    Under certain circumstances intoxication can render a *Miranda* waiver involuntary. See *People v. Feagans*, 134 Ill. App. 3d 252, 480 N.E.2d 153 (1985). The suppression of a statement is warranted if the evidence "plainly shows that a suspect is so grossly intoxicated that he no longer has the capacity to knowingly waive his rights." *Id*. at 259, 480 N.E.2d at 158. Evidence of less than gross intoxication goes to the weight to be accorded to the defendant's statement and not the admissibility of the statement. *Id*. at 259, 480 N.E.2d at 158-59. In denying defendant's motion to suppress, the trial court considered the circumstances surrounding the confession, specifically whether defendant was under the influence of drugs. *People v. Koesterer*, 44 Ill. App. 3d 468, 479, 358 N.E.2d 295, 304 (1976). The court compared defendant's conduct on the night of February 10, 2009, to Dr. Chapman's report concerning the physical and mental impact of the drugs defendant claimed to have taken before being picked up by Garthaus and Kaufman. The court determined that defendant did not suffer from the various physical and mental impairments described in Dr. Chapman's report:

"Dr. Chapman says that these drugs could have caused unsteady gait, and I don't have that. Drowsiness, they said he was tired. Confusion, the officers, the troopers said he was not confused, that he was responsive, he was engaged, he understood impaired body perceptions. He said they had to help him to the bathroom, but that's not what the troopers said. Impaired capacity to understand, and the testimony I have, both from the jail and from the troopers, was that he answered the questions appropriately. He understood the questions and gave appropriate answers. So the description that Dr. Chapman gives of what happens if you take these medications, and maybe he did, I don't know, but what one would see I have no evidence of. And without that, I cannot find that the confession was not, that the statement was not voluntary."

The court's determination of voluntariness was also based in part on the testimony provided by Kaufman and Garthaus. At trial, Kaufman testified that defendant never needed assistance walking to or using the bathroom facilities at the police station. Kaufman also stated that defendant look tired, but he continued to respond to the agents' questioning. Both Kaufman and Garthaus testified that defendant was engaged in the interview and communicated well with the agents. Defendant introduced conflicting testimony concerning his physical and mental state during the interview, but the court found the agents' testimony more credible. "It is the function of the trial court to determine the credibility of the witnesses and to resolve any conflict in their testimony." *People v. Matney*, 293 Ill. App. 3d 139, 146, 686 N.E.2d 1239, 1243 (1997). The court properly determined that the agents were more credible witnesses than the defendant. Defendant claimed to have taken an overdose of drugs in an attempt to commit suicide, but he hid the suicide notes and did not give them to anyone until three days after leaving jail. Defendant's testimony also differed from the report he gave to Dr. Chapman concerning the events of February 10, 2009, particularly with respect to the time and date that defendant took the overdose of drugs. We agree with the court's determination that defendant's confession was voluntarily made, because the court properly considered the totality of the circumstances surrounding the confession.

¶ 19    The admissibility of evidence at trial is a matter within the sound discretion of the trial court. A trial court's ruling may not be reversed absent a clear abuse of discretion. *People*

*v. Manning*, 182 Ill. 2d 193, 211, 695 N.E.2d 423, 431 (1998). In this case, the recording at issue was made by H.H. on her cell phone. H.H. testified that the recording captured the audio from her father sexually assaulting her on February 9, 2009. She identified the voices on the recording as those of herself and defendant. Initially, the court found the recording was not good quality. However, after listening multiple times to an enhanced recording made by the Illinois State Police, the court found the recording was "more audible than not."

¶ 20     Defendant claims the trial court abused its discretion in admitting H.H.'s cell phone recording into evidence, because the recording was inaudible and irrelevant. He points to the court reporter's inability to transcribe the recording and the judge's difficulty hearing the recording. Defendant also argues the probative value of the recording is outweighed by its prejudicial effect, because the recording is audible enough to allow listeners to speculate as to what was occurring without providing information as to the identity of the speakers or the act being recorded.

¶ 21     The trial court did not abuse its discretion in admitting H.H.'s cell phone recording into evidence. A partially inaudible sound recording is admissible unless the inaudible portions are so substantial as to the render the recording untrustworthy as a whole. *Id*. at 212, 695 N.E.2d at 431. It is within the trial court's discretion to determine the admissibility of a recording that is partially inaudible. *Id*. The State argues that the recording in this case is similar to the recording at issue in *Manning*. In *Manning*, 182 Ill. 2d at 211-12, 695 N.E.2d at 431, the defendant claimed the trial court erred by admitting into evidence a tape-recorded conservation between himself and an informant, because of inaudible gaps in the conversation. The informant testified that the inaudible gaps occurred at the times when the defendant confessed to murdering the victim. *Id*. The court found that the inaudible gaps in the recording were relevant only as to the weight of the evidence and not its admissibility. *Id*. at 212, 695 N.E.2d at 431-32. We agree with the State, the recordings are comparable because of the nature of the inaudible portions of the respective recordings. Like the court in *Manning*, the trial court noted that the inaudible portions of the recording were relevant as to the weight of the evidence, but not the admissibility. The court did not use the recording to identify defendant as the person whispering on the recording. After listening to the recording, the court determined that H.H. was in distress and someone was whispering to her. The court found the recording was relevant evidence as to whether H.H. was sexually assaulted. Further, the court pointed to H.H.'s and Stephanie's testimony, not the recording, as providing evidence as to defendant being the person whispering in the recording. During the trial, H.H. and Stephanie both identified defendant as the person whispering in the recording. The court also considered Stephanie's reaction after hearing the recording on February 9, 2009. After listening to the recording, Stephanie packed up her family and immediately left the home she shared with defendant. The court did not abuse its discretion in admitting the partially audible recording, because the court relied on the recording only to determine that H.H. was in distress and someone was whispering to her.

¶ 22     A sentence imposed by a trial judge should not be overturned absent an abuse of discretion. *People v. Anders*, 228 Ill. App. 3d 456, 467, 592 N.E.2d 652, 659 (1992). A trial judge's ruling is entitled to great deference, because a trial judge is better able to make a firsthand, reasoned judgment based on the defendant's moral character, credibility,

demeanor, social habits, and age. *Id*. In considering the propriety of a sentence, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed the relevant factors differently. *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). A sentence within the statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Id*. at 54, 723 N.E.2d at 210.

¶ 23 Defendant argues the trial court abused its discretion in imposing an eight-year sentence for his criminal-sexual-assault conviction. He claims the court's sentence was excessive, because it gave insufficient weight to the evidence in mitigation and overemphasized the fact that defendant abused a position of trust as H.H.'s father.

¶ 24 In this case, we find the trial court did not abuse its discretion in sentencing defendant to eight years' imprisonment for sexually assaulting his daughter. A conviction for criminal sexual assault is a Class 1 felony (720 ILCS 5/12-13(b)(1) (West 2008)). Under the Unified Code of Corrections, a Class 1 felony is punishable by 4 to 15 years' imprisonment (730 ILCS 5/5-4.5-30 (West 2008)). Defendant's sentence of eight years is well within the statutory limit. Contrary to defendant's argument, the court properly weighed the factors in mitigation and aggravation. The balance to be struck amongst the aggravating and mitigating factors is a matter of judicial discretion that should not be disturbed absent an abuse of discretion. *People v. Hernandez*, 204 Ill. App. 3d 732, 740, 562 N.E.2d 219, 225 (1990). The court considered in mitigation that defendant had no prior criminal history, is a veteran, has an extensive work history, and supports his family. The court considered in aggravation the seriousness of the offense, defendant's superior position of trust in relation to H.H. as her father, and H.H.'s impact statement in which she stated she would be dealing with her father's abuse for the remainder of her life. *People v. Burke*, 226 Ill. App. 3d 798, 800-01, 589 N.E.2d 996, 998 (1992). The court properly accounted for the relevant mitigating and aggravating factors without giving undue weight to the defendant's paternal relationship with H.H. The eight-year sentence imposed by the court was neither excessive nor contrary to the spirit of the law.

¶ 25 III. CONCLUSION

¶ 26 For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 27 Affirmed.