NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 170760-U

NO. 4-17-0760

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 7, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| GILBERTO PORTUGUEZ, | ) | No. 15CF246 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Steigmann and Justice Holder White concurred in the judgment.

**ORDER**

*Held*: The trial court did not abuse its discretion and considered all relevant factors in aggravation and mitigation when sentencing defendant to six years in the Illinois Department of Corrections.

¶ 1 In August 2015, as the result of a consensual search of defendant Gilberto Portuguez's residence conducted in December 2013, defendant was charged with unlawful production of cannabis sativa plants (720 ILCS 550/8(d) (West 2012)) in that he knowingly possessed more than 50 but not more than 200 cannabis plants, a Class 2 felony. Defendant, who represented himself at trial, was convicted by a jury of the single count. The trial court sentenced defendant to six years in the Illinois Department of Corrections. Defendant then accepted representation of counsel for purposes of filing a motion to reconsider his sentence, which was ultimately denied.

¶ 2　　　　Defendant appeals his sentence, contending the trial court abused its discretion by (1) considering unverified criminal history records contained in the presentence investigation report, (2) relying on unwarranted speculation that defendant intended to sell the cannabis found at his residence when deciding an appropriate sentence, and (3) failing to consider relevant mitigating factors in defendant's favor when fashioning his sentence. We affirm.

¶ 3　　　　　　　　　　　　　I. BACKGROUND

¶ 4　　　　Based upon information received by the Livingston County Sheriff's Department, an investigator with the sheriff's office went to defendant's residence in December 2013 to conduct a "knock and talk," wherein the officer sought to engage the resident in a conversation to determine whether he was willing to consent to a search of the residence. Upon his arrival, defendant answered the door, acknowledged it was his residence, and ultimately admitted to growing cannabis, leading the investigator to an elaborate "cannabis grow" in his basement.

¶ 5　　　　The investigator, who then called for additional deputies, found 53 smaller cannabis plants in varying stages of growth, along with 58 larger plants at different growth stages. The growing area, which the investigator described as being "really expensive," contained chrome-colored walls to reflect light from "almost like suntanning bulbs," attached to timers. There were also "huge Co2 can[n]isters" of carbon dioxide, which were pumped into the growing areas to accelerate plant growth at various stages. They also found fans and a filtered ventilation system intended to prevent the smell of cannabis from extending beyond the basement. Based upon the investigator's knowledge and experience with "cannabis grows," these things were all evidence of an elaborate cannabis production operation for profit.

¶ 6　　　　As a result, defendant was charged with one count of unlawful production of cannabis sativa plants, a Class 2 felony, in August 2015. At his initial arraignment, defendant,

who later described himself as a "*propera persona*" defendant, declined counsel, indicating he wished to represent himself. By the time of trial in May 2017, defendant had contested the court's jurisdiction over him and argued he was not subject to criminal prosecution. Although present throughout, he did not actively participate in the jury trial and did not testify in his own behalf.

¶ 7　　　　The jury was instructed on the offense of unlawful possession of more than 50 but not more than 200 cannabis sativa plants (Illinois Pattern Jury Instructions, Criminal, Nos. 17.11, 17.12 (4th ed. 2000)), and the two verdict forms referenced unlawful possession of cannabis sativa plants only. No further mention was made of the actual charge of unlawful production. The jury returned a verdict of guilty. Defendant was ordered to cooperate with the court services department in the preparation of a presentence investigation report and remained free on bond pending sentencing.

¶ 8　　　　At sentencing in September 2017, the presentence investigation report indicated defendant, who also went by several aliases, had criminal identification numbers from Texas, California, Michigan, Georgia, and Florida, in addition to those from Illinois and the Federal Bureau of Investigation. Defendant denied any arrests associated with Texas, California, Michigan, and Georgia. At the time the presentence investigation was being conducted, defendant was awaiting trial in Cook County for manufacture/delivery of a controlled substance (cocaine).

¶ 9　　　　Known criminal convictions as an adult included unlawful possession of a controlled substance out of Cook County in December 1983, for which defendant received 2 years of probation; open carry of a weapon, resisting/obstructing without violence out of Broward County, Florida, in August 1992, for which defendant received 18 days in jail; criminal

drug conspiracy in Will County in March 1998, for which defendant received a 15-year sentence in the Department of Corrections; two different unlawful possession of controlled substances cases from Cook County in December 1996, resulting in 18 months of "special" probation and 90 days in jail served concurrently with his 15-year sentence from Will County; another manufacture/delivery of controlled substances from Cook County in October 1998, with a 6-year sentence served concurrently with his 15-year sentence from Will County; and unlawful possession of cannabis from Livingston County in October 2013, for which defendant received 1 year of conditional discharge and 2 days in jail.

¶ 10          A list of nine offenses from Cook County for dates between 1972 through 1996 were noted, which defendant either said he did not recognize or believed were dismissed, *nolle prosequi*, or for which he was found not guilty. Four additional offenses were identified from Florida from 1981, 1988, and 1993, two of which defendant believed were dismissed. None of the nine Cook County cases or the four Florida cases were verified by court services.

¶ 11          The presentence investigation report also indicated defendant tested positive for benzodiazepine, heroin, methadone, morphine, and cocaine at his presentence interview on June 6, 2017, approximately one week after being found guilty in this case. Defendant informed the report writer he bought methadone "off the street," using between 10-15 milliliters per day for sciatic nerve pain as well as arthritis in his knees. He acknowledged purchasing illegal substances for pain management, admitting to cannabis use since his twenties and cocaine usage since he was 25. He said he started using heroin in his forties and used it daily until 1996, and he began snorting it in 2012. Defendant admitted the use of these substances continued until within "a week" or "a couple months" before he was interviewed. As a result, he was requested to

- 4 -

perform a drug test by the probation department when he appeared for sentencing on September 19, 2017; however, he refused.

¶ 12        Defendant admitted the growing of cannabis was both for his pain management and because it "pays bills." The report writer noted, when asked by the police at the time of the search whether he sold the cannabis to make money, defendant told them this was his "first time" and that he did not get anything out of it because it takes "three months cycles" to get going.

¶ 13        When asked if he had "[a]ny objection to the [presentence] report that was tendered" or whether there was "any information in there that you believe is incorrect or needs to be clarified," defendant said, "nope."

¶ 14        The State recommended six years in the Illinois Department of Corrections, noting defendant was convicted of a Class 2 felony, had a prior history of delinquency involving the same type of charges, and that his character and demeanor were such that he would not be likely to comply with a term of probation. The State pointed to the fact defendant continued to use controlled substances even after being found guilty in this case and lied to the probation department about how recent his drug use had been. It also noted, in the presentence report, defendant sought to deny the cannabis plants were his. The State also argued deterrence was a major consideration when taking into account the "large scale production of cannabis sativa plants" and argued probation would "deprecate the seriousness of the facts."

¶ 15        Defendant asked for probation, in part, due to his ongoing medical issues. He also denied lying to the probation department.

¶ 16        The trial court began its discussion of what might constitute an appropriate sentence by observing, "the statute does direct the Court to consider probation as the first and preferred disposition unless it would deprecate the serious nature of the charges." The court said

there were a number of factors to be considered, including the evidence at trial, aggravating and mitigating factors set forth in the statute, defendant's own statements, the financial impact of a sentence, and "other relevant statutory factors." Finding the aggravating factors outweighing those in mitigation, the court noted defendant's prior record, acknowledging the extent of the record was a little confusing due to the existence of some unverified cases. Outlining defendant's periods of incarceration, the court found there were apparently no convictions between 2003 and 2013. However, defendant's criminal history indicated his involvement with drug-related offenses was long-standing. The court acknowledged, "selling is not the charge here, but obviously, given the amount that we're dealing with I think that's a reasonable thing to be thinking about." As a result, the court indicated defendant's prior record with not only possession-related offenses, but also manufacturing or delivery of controlled substances, "is a pretty strong aggravating factor." The court also discussed the need for deterrence as a "strong aggravating factor." The court recognized the number of plants made it appear less likely they were for defendant's personal use.

¶ 17    The trial court discussed factors in mitigation, observing, "[t]here aren't very many mitigating factors here." The court concluded defendant's ongoing medical condition was not such that it would be endangered by imprisonment. The surgery defendant talked about during the pendency of the case had already taken place, and he was now engaged in therapy, which could be conducted in the Illinois Department of Corrections.

¶ 18    In summation, the trial court noted the "very serious offense," because defendant was "a person engaged in the production of cannabis sativa plants that appears to be an amount well beyond personal use," and two aggravating factors "that really stand out, [defendant's] prior record as well as deterrence." Finding probation would deprecate the seriousness of the offense,

the court concluded the State's recommendation was appropriate, noting defendant had previously been sentenced to prison for six years on a manufacturing/delivery charge, which did not deter him from future criminal conduct. The court then imposed a sentence of six years in the Illinois Department of Corrections.

¶ 19        During the trial court's admonishment of defendant's appeal rights, he indicated his intention to appeal and accepted the appointment of the public defender to perfect a motion to reconsider the sentence in preparation for his appeal. Defendant's motion for reconsideration, filed September 25, 2017, alleged the court failed to consider all mitigating factors, noting specifically: (1) the offense was not a violent offense and defendant's conduct neither caused nor threatened serious physical harm to another, nor did defendant contemplate that it would; (2) defendant led a law-abiding life for a substantial period of time before this conviction; (3) the court improperly considered a number of what defendant described as "unverified, inaccurate and non-confirmed" criminal offenses listed in the presentence investigation report; and (4) the court failed to consider defendant's advanced age and health. Defendant also contended the sentence imposed was an abuse of discretion, excessive, and disproportionate to the nature of the offense.

¶ 20        At the hearing on defendant's motion, the public defender focused primarily on mitigating factors he contended were not considered by the trial court, the prejudice caused by the inclusion of various offenses for which there was no verifying information, and defendant's age and medical condition. The State pointed out a motion for reconsideration was not an opportunity to present new or additional arguments to the court. It noted the court was well aware of defendant's age and medical condition and had noted the unverified criminal history information would not be considered, and the State pointed out that a substantial portion of the

time defense counsel attributed to law-abiding conduct was due to a 15-year prison sentence defendant was serving.

¶ 21 In denying the motion, the trial court said it considered all relevant factors in mitigation, including those mentioned by defendant, whether expressed or not. Although defendant sought to raise new arguments at the motion hearing, the court specifically stated it "did consider all of the aggravating factors, [and] all of the mitigating factors." The court did not find the mitigating factors "very strong in this case" and said it "certainly felt and continue[s] to feel that the aggravating factors in this case strongly outweigh the mitigating factors." Having considered all the factors raised by defendant postsentencing and finding the sentence within the statutory range and appropriate under the circumstances, the court denied the motion to reconsider.

¶ 22 This appeal followed.

¶ 23                                II. ANALYSIS

¶ 24 "The sentence imposed by the trial court is entitled to great deference and will not be reversed on appeal absent an abuse of discretion." (Internal quotation marks omitted.) *People v. Wheeler*, 2019 IL App (4th) 160937, ¶ 39, 126 N.E.3d 787 (quoting *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38, 92 N.E.3d 494). "When imposing a sentence, the trial court must consider statutory factors in mitigation and aggravation, but the court need not recite and assign a value to each factor it has considered." *McGuire*, 2017 IL App (4th) 150695, ¶ 38. "The weight to be accorded each factor in aggravation and mitigation in setting a sentence of imprisonment depends on the circumstances of each case." *People v. Hernandez*, 204 Ill. App. 3d 732, 740, 562 N.E.2d 219, 225 (1990). Citing *Hernandez* in *People v. Crenshaw*, 2011 IL App (4th) 090908, ¶ 24, 959 N.E.2d 703, this court said, "[t]he balance to be struck amongst the aggravating and

mitigating factors is a matter of judicial discretion that should not be disturbed absent an abuse of discretion." "In considering the propriety of a sentence, the reviewing court must proceed with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20 (quoting *Fern*, 189 Ill. 2d at 54).

¶ 25    Here, defendant contends the trial court considered improper factors in aggravation and/or failed to consider relevant mitigating factors, and as a result, it abused its discretion by imposing an excessive sentence. In essence, this was the same argument raised in his motion to reconsider the sentence. However, it is true a trial court is not to consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors when fashioning a sentence (see *Hernandez*, 204 Ill. App. 3d at 740). "The defendant bears the burden to affirmatively establish that the sentence was based on improper considerations, and we will not reverse a sentence *** unless it is clearly evident the sentence was improper." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 29, 82 N.E.3d 693.

¶ 26    By selectively parsing some of the trial court's comments at sentencing while ignoring others, defendant argues the court found no mitigating factors present, or it failed to take them into consideration. The record reflects otherwise. While explaining its rationale for the sentence it was about to impose, the trial court first acknowledged it was required to consider probation, then proceeded to discuss the other "number of factors that I have to take into consideration including the evidence that was received at trial, aggravating and mitigating factors

as set forth in the statute, other matters including the defendant's statement, the financial impact of a sentence and other relevant statutory factors." The court went on to say, "when I look at the aggravating and mitigating factors in the case, it does seem that the aggravating factors outweigh the mitigating factors." The court then discussed the aggravating factor of defendant's prior criminal history.

¶ 27 Defendant contends the trial court "improperly rel[ied] on unverified criminal history records," arguing the court considered some of the unverified information regarding offenses from the seventies when fashioning its sentence. Actually, the court merely mentioned them, noting defendant's prior record was "a little confusing reading the report since some of the stuff has not been verified and/or confirmed." Taken in context, the comments about how far back the record goes were mentioned in relation to the confusing nature of the information. The court then switched gears, referencing a summary of actual convictions upon which it was relying: "[s]o there was a summary that was a little bit more helpful and that came—Here we go. You were sentenced in 1998 on some drug related offenses that you were paroled in 2003, and then nothing between 2003 and 2013 if I understand your PSI correctly." The court then specifically noted, "and then there was some more arrests; and there are pending charges *which this court is not considering because you are presumed innocent.*" (Emphasis added).

¶ 28 What defendant does not say, and which would not be clear from the transcript, is that the presentence investigation report was structured in such a way as to list all known convictions first, then separately identify those for which there was no verification beyond their listing in the National Criminal Information Computer for this defendant. In spite of the lack of verification, defendant was familiar with at least 5 of the 13 offenses, indicating dispositions by dismissal, *nolle prosequi*, or a finding of not guilty. Defendant's argument disregards entirely the

State's perfectly reasonable observation that defendant, at the outset of the sentencing hearing, denied he had "[a]ny objection to the report that was tendered, or any information in there that [he] believe[d] was incorrect or needs to be clarified." There is nothing about the court's comments which support defendant's claim. The court made no specific reference to any of the "unverified" offenses when providing its analysis of defendant's criminal history, and it is not reasonable to conclude it was unable to distinguish the unverified offenses from those known to be defendant's.

¶ 29     One comment by the trial court, "[b]ut you do have a history of drug related offenses going back to your youth, and I understand that," is grasped upon by defendant as justification for his claim the court considered the unverified cases listed. Instead, elsewhere in the report, defendant acknowledged his involvement with cannabis began "in his 20's" and continued to the present time. He acknowledged using cocaine since he was 25, and he continues to do so. Of the four Florida offenses between 1981 and 1993 listed as unverified, there is no comment or notation by the report writer indicating defendant "did not recall" them or denied the Florida cases were his. In fact, he identified two of the four as having been either dismissed or resulting in a finding of no probable cause. A 1981 marijuana delivery/possession conviction out of Hillsborough County, Florida, resulted in a sentence of two years of probation. It, too, would have taken place while defendant was in his twenties, and there is no notation indicating defendant either denied or did not recall this case, so the court's comment must be taken in context.

¶ 30     Defendant contends the trial court's comments that his history was a "pretty strong aggravating factor" and, "you have continued to make bad choices throughout your entire life," are to be interpreted by this court to "show reliance on the unverified records that

- 11 -

[defendant] did not remember, or believed were dismissed or not prosecuted." This amounts to pure speculation by defendant since the record reveals the only offenses specifically referenced by the court were those convictions defendant does not contest. "[T]he reviewing court should not focus on a few words or statements of the trial court. Rather, the determination of whether or not the sentence was improper must be made by considering the entire record as a whole." *People v. Ward*, 113 Ill. 2d 516, 526-27, 499 N.E.2d 422, 426 (1986).

¶ 31 "Whether a trial court considered an improper factor when sentencing a defendant is a question of law, which we review *de novo*." *People v. Winchester*, 2016 IL App (4th) 140781, ¶ 72, 66 N.E.3d 601. "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22, 979 N.E.2d 1014. It is the defendant's burden to " 'affirmatively establish' " the trial court relied on an improper sentencing factor when fashioning its sentence. *People v. Williams*, 2018 IL App (4th) 150759, ¶ 18, 99 N.E.3d 590.

¶ 32 Even if defendant is able to meet his burden to show the trial court actually relied upon an improper factor in sentencing, remand is not required "where it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence ***." (Internal quotation marks omitted.) *People v. Gilliam*, 172 Ill. 2d 484, 521, 670 N.E.2d 606, 623 (1996) (quoting *People v. White*, 114 Ill. 2d 61, 67, 499 N.E.2d 467, 469 (1986), quoting *People v. Bourke*, 96 Ill. 2d 327, 332, 449 N.E.2d 1338, 1340 (1983)).

¶ 33        Here, the trial court repeatedly noted it was to consider both factors in aggravation and mitigation, concluding the aggravating factors carried greater weight. Defendant, 65 years of age, was facing a Class 2 felony for growing 53 small and 58 large cannabis plants with a total weight of 4221 grams as part of an elaborate and expensive cannabis growing operation. He admitted he was doing so, not only for personal pain management, but because it "pays bills." Although he told the police this was his first time, he somehow knew he did not yet have a crop ready for sale because it takes "three months cycles" to get going.

¶ 34        Defendant had a verified criminal history stretching back 34 years, or roughly half of his life, to 1983. He told the probation department he was using cannabis in his twenties. His first verified conviction was for controlled substances in 1983, and since that time, he had been convicted of one criminal drug conspiracy in 1994, two possession of controlled substances cases in 1995, and one manufacture/delivery of controlled substances in 1996. This does not include an unrelated weapons offense out of Florida in 1992 and a previous cannabis possession in Livingston County in 2013. Having previously received a 15-year sentence, a 6-year sentence, two sentences of 18 months "special" probation, 2 years of probation, and 1 year conditional discharge, defendant was not deterred from becoming involved in a large-scale cannabis production operation for which he was now facing the possibility of anywhere from 3 to 7 years in the penitentiary.

¶ 35        Defendant had been asked to provide a urine screen prior to the beginning of his sentencing hearing and he refused. He told the probation department he had not consumed cocaine since "last month" and heroin "a week ago" when he appeared for his presentence interview in June 2017. A drug screen conducted that day showed defendant tested positive for benzodiazepine, heroin, methadone, morphine, and cocaine. He did not contest the results,

- 13 -

admitting buying methadone "off the street" and using "narcos," or narcotic drugs, without a valid prescription.

¶ 36        One would be hard-pressed not to consider defendant's criminal history significant, or his involvement with controlled substances long-standing. There is nothing in this record, absent defendant's bare speculation, to indicate the trial court improperly considered any unverified criminal history in fashioning its sentence.

¶ 37        Next, defendant contends the trial court abused its discretion in noting the distinct possibility defendant was growing 111 cannabis plants, using sophisticated lighting connected to timers, large carbon dioxide cannisters, and an elaborate ventilation system, all consistent with what the investigator described as an "expensive" cannabis "grow" operation or industry, for the combined purposes of use and sale. Defendant argues since "intent to sell" was not charged, then it could not be considered. Of course, this completely ignores defendant's own admission to the police, as reflected in the presentence investigation report, that he grew the cannabis both for his pain management and because it "pays bills," or defendant's admission he was growing the cannabis to make money, but that the grow cycle had not yet reached that point. It also fails to recognize the trial court had defendant's criminal history before it, indicating prior convictions for criminal drug conspiracy and manufacture/delivery of controlled substances, neither of which are considered simple possession offenses.

¶ 38        Trial courts may discuss the extent and nature of a defendant's involvement in a crime without being found to have relied on an improper factor in aggravation. In *People v. Rios*, 2011 IL App (4th) 100461, 960 N.E.2d 70, the defendant contended the trial court improperly considered a factor in aggravation which was inherent in the offense by commenting on the amount of money a defendant, convicted of possession with intent to deliver, was making a day,

the number of people being supplied, and the lack of financial need to sell drugs. We found comments by the court intended to highlight the "extent and nature of a defendant's involvement in a particular criminal enterprise, a defendant's underlying motivation for committing the offense, the likelihood of the defendant's commission of similar offenses in the future and the need to deter others from committing similar crimes" are proper considerations. *Rios*, 2011 IL App (4th) 100461, ¶ 15.

¶ 39        Here defendant acknowledged his motivation for producing the plants was to "pay bills," thereby clearly implying an intention to sell some of the cannabis he produced. Considering the evidence of the quantity of plants and the "elaborate" growing methods, when coupled with defendant's own statements, it was not unreasonable for the trial court to consider the very real possibility the production of such a quantity of cannabis plants was, at least in part, intended for sale. This does not constitute reliance upon an improper factor in aggravation but is instead the observation of the court based upon both circumstantial and direct evidence. The trial court is permitted to consider the amount of drugs possessed, especially "within the context of determining the seriousness of the offense, the need to protect the community, the need to deter others from committing similar crimes, and to punish the defendant. These [are] all appropriate considerations for the court." *People v. Garcia*, 2018 IL App (4th) 170339, ¶ 42, 99 N.E.3d 571. Such was the context in which the comments were made. The court noted defendant's criminal history, history of drug related offenses and continued involvement with drugs, the seriousness of the offense, the need to deter others, and the protection of society—all proper areas of consideration at sentencing. See *People v. McGath*, 2017 IL App (4th) 150608, ¶ 63, 83 N.E.3d 671.

¶ 40 Defendant next contends the trial court abused its discretion by failing to consider defendant's health, length of law-abiding behavior, and the nonviolent nature of the offense as factors in mitigation. Considering the fact defendant appeared throughout this case, repeatedly referenced his medical condition, requested continuances based on anticipated medical procedures or treatments, sought a continuance of his sentencing because he was still "receiving treatments," maintained his cultivation of cannabis was to manage the pain caused by his medical condition, and argued his medical condition as a reason he should receive probation, it is difficult to envision a circumstance where a trial court could have been any more aware of a defendant's medical condition.

¶ 41 When offered an opportunity to make a recommendation to the trial court with regard to what his sentence should be, defendant began with: "[w]ell, on the sentencing, Judge, you know, I would like to get probation because, you know, I've got medical reasons to. And I still haven't finished my, you know, my therapies." During its pronouncement of sentence, the court noted: "I understand you are talking about issues with regard to your medical condition; and that is, there is a mitigating factor that imprisonment would endanger your medical condition. I don't see that as being a factor in this case. You've had your surgery. You are doing, you are engaged in therapy. There's nothing to suggest that your condition would worsen whether that therapy was modified or adjusted or completed in the Department of Corrections if that's the sentence." Defendant references this interchange between the court and defendant in his brief. Defendant's argument, in reality, is not that the court failed to consider his medical condition, but that the court did not assign the amount of weight to it defendant deems appropriate. It is clear mitigating evidence was before the court. When mitigating evidence is

before the court, it is assumed that the court considered it, unless the record indicates otherwise. *People v. Burton*, 184 Ill. 2d 1, 34, 703 N.E.2d 49, 65 (1998).

¶ 42 Defendant further contends the trial court "failed to consider that [defendant] did not cause physical harm, or contemplate that harm would be caused, to another person." As we noted at the outset of this analysis, a sentencing court "is not obligated to recite and assign value to each factor it relies upon, nor does it need to place greater weight on defendant's rehabilitative potential than on the seriousness of the offense or the need to protect the public." *People v. Mayoral*, 299 Ill. App. 3d 899, 913, 702 N.E.2d 238, 248 (1998). The same is true here. Having indicated it has considered the statutory factors in aggravation and mitigation, we are to presume the court considered the nonviolent nature of the offense; it just didn't give it much weight in the overall analysis, nor is it required to. *People v. McCain*, 248 Ill. App. 3d 844, 853-54, 617 N.E.2d 1294, 1301-02 (1993).

¶ 43                                III. CONCLUSION

¶ 44 Having found the trial court properly considered the statutory factors in aggravation and mitigation and imposed a sentence within the statutory range of sentences possible, we find there was no abuse of discretion and affirm the judgment and sentence of the court.

¶ 45 Affirmed.